UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                              :
JAMES MANNING,                                                :
                                         Plaintiff,           :        23 Civ. 2352 (LGS)
                -against-                                      :
                                                              :        **OPINION AND ORDER**
CITY OF NEW YORK, et al.,                                      :
                                        Defendants.           :
------------------------------------------------------------- X

LORNA G. SCHOFIELD, District Judge:

Plaintiff, proceeding pro se, brings claims under 42 U.S.C. § 1983, alleging that a tax lien

was improperly entered against Bethelite Community Baptist Church ("Bethelite"), of which

Plaintiff is the pastor, for unpaid water and sewer taxes.  Plaintiff's Complaint alleges that the tax

lien and the sale of the lien to Bank of New York Mellon ("BNY Mellon") and the 1998-2 Trust

have denied Plaintiff his right to freedom of speech, religious liberty and due process.

Defendants move to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(1).  The

motion is granted.

## I.    BACKGROUND

The following facts are taken from the Complaint and documents it incorporates by

reference.  *See Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021).  These facts are assumed to be

true for purposes of this motion and are construed in the light most favorable to Plaintiff as the

nonmoving party.  *See Int'l Code Council, Inc. v. UpCodes Inc.*, 43 F.4th 46, 53 (2d Cir. 2022).

Because Defendants' motion raises jurisdictional issues, facts also are taken from exhibits

attached to Defendants' memorandum of law in support of their motion to dismiss.  *See Kamen*

*v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986); *accord Rai v. Rai*, No. 21 Civ.

11145, 2023 WL 2456831, at *2 (S.D.N.Y. Mar. 10, 2023).  Judicial notice is taken of decisions

in the underlying state court litigation.  *Simmons v. Trans Express Inc.*, 16 F.4th 357, 360 (2d

Cir. 2021) ("The district court properly took judicial notice of documents indicating the claims Simmons brought in small claims court, the remedies she sought, and the judgment she was awarded.").

Plaintiff is the pastor of Bethelite, a non-profit religious institution that owns property located at 36-38 West 123rd Street, New York, New York (the "Property"). Since 1985, Bethelite has sought an exemption from water and sewer charges on the Property due to its status as a tax-exempt religious corporation. The applications have been denied each time by the Department of Environmental Protection of the City of New York (the "DEP"). In 1996, the DEP suggested a partial exemption may be possible should separate meters for different church and non-church areas be installed. Bethelite has not installed separate meters and has not paid any water and sewer charges due since 1985.

A tax lien was assessed against the Property, and on May 13, 2002, the lien was sold to NYCTL 1999-1 Trust. In 2005, the lien was assigned to the NYCTL 2005-A Trust, and in 2010, it was assigned to the 1998-2 Trust.

On March 4, 2004, Bethelite commenced a special proceeding in New York Supreme Court, No. 103377/04, under CPLR Article 78 against defendants that included the DEP and the City of New York (the "City"), seeking reversal of the DEP's denials of an exemption for the water and sewer charges, annulment of the existing charges and revocation of the tax lien. After Bethelite initially prevailed in the action, the New York Court of Appeals reversed the granting of Bethelite's petition and remitted the case to the New York Supreme Court to allow defendants to submit an answer and for further proceedings on the pleadings. *Bethelite Cmty. Church v. Dep't of Env't Prot.*, 870 N.E.2d 679, 680 (N.Y. 2007). After further litigation, on August 10, 2017, the New York Supreme Court denied Bethelite's application for an exemption from water

and sewer charges and dismissed the case.  The Appellate Division affirmed that dismissal on May 23, 2019.  *Bethelite Cmty. Church v. Dep't of Env't Prot.*, 102 N.Y.S.3d 556 (1st Dep't 2019).

In September 2009, the 2005-A Trust began an action in New York state court, No. 113197/09, to foreclose on the Property.  A judgment of foreclosure and sale was granted in January 2016 but was vacated pending the final adjudication of Bethelite's Article 78 challenge to the tax lien.  After the Appellate Division's 2019 decision affirming dismissal of the Article 78 challenge, on June 18, 2019, the Supreme Court granted summary judgment to the Trust against Bethelite in the foreclosure action and ordered a referee compute the amount due on the tax lien.  The referee's report found that Bethelite owed $2,199,623.88 as of July 5, 2019.  On February 19, 2020, the Supreme Court confirmed the referee's report and granted a judgment of foreclosure and sale.  Bethelite appealed the order, which was affirmed on March 4, 2021. *NYCTL 1998-2 Tr. v. Bethelite Cmty. Baptist Church*, 139 N.Y.S.3d 796 (1st Dep't 2021). While the appeal was pending, Bethelite also moved to vacate the order of foreclosure and sale, among other relief, and the Trust cross-moved for an extension of time to conduct the foreclosure sale. *NYCTL 1998-2 Tr. v. Bethelite Cmty. Baptist Church*, No. 113197/2009, 2022 WL 392518, at *1 (Sup. Ct. N.Y. Cnty. Feb. 4, 2022).  The Supreme Court denied Bethelite's motion in its entirety and granted the Trust's cross-motion for an extension of time to conduct the foreclosure sale. *Id.* at *2.  The Appellate Division again affirmed the Supreme Court's opinion. *NYCTL 1998-2 Tr. v. Bethelite Cmty. Baptist Church*, 178 N.Y.S.3d 32 (1st Dep't 2022).  In 2022, Bethelite filed for Chapter 11 bankruptcy, briefly staying the foreclosure sale until the bankruptcy petition was dismissed on February 8, 2023.  After being re-noticed, the sale was then stayed again in December 2023 when Bethelite filed for bankruptcy a second time.  The

automatic bankruptcy stay has since been lifted as to the foreclosure action.  The foreclosure sale is now set to occur in the near future.  On June 21, 2024, Plaintiff filed an action in this Court, seeking injunctive relief to stop the foreclosure.  Injunctive relief was denied, and the suit was dismissed.  *Manning v. City of New York*, No. 24 Civ. 4747, 2024 WL 3377997 (S.D.N.Y. July 11, 2024).

On March 17, 2023, Plaintiff filed the instant action seeking damages of "$23 million dollars from [t]he City of New York for violation of my civil rights [and] $23 million dollars separately from the Bank of New York Mellon . . . and the NYCTL 1998-2 Trust (one million for each year) for violation of my civil rights [plus] interest starting from 2002 [when] they purchased the lien . . . ."  Defendants filed a joint motion to dismiss this action, arguing that the case is barred by the statute of limitations.  The motion was denied without prejudice, and the Court sought briefing on the issue of subject matter jurisdiction.  On March 12, 2024, Defendants filed a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1).  Plaintiff responded on March 21, 2024.

## II.    APPLICABLE LAW

A Rule 12(b)(1) motion challenging subject matter jurisdiction may be based solely on the complaint or may rely on evidence beyond the pleadings.  *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 441 (2d Cir. 2022).  "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction."  *Fountain v. Karim*, 838 F.3d 129, 134 (2d Cir. 2016).[1]  But when "jurisdictional facts are placed in dispute" the court must "decide issues

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, footnotes and citations are omitted, and all alterations are adopted.

of fact by reference to evidence outside the pleadings, such as affidavits." *Harty*, 28 F.4th at 441. "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Fountain*, 838 F.3d at 134.

Article III of the Constitution confines federal courts' jurisdiction to "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. "For there to be a case or controversy under Article III, the plaintiff must have a personal stake in the case -- in other words, standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). A federal court must satisfy itself that it has subject matter jurisdiction over a case before it may adjudicate the merits and may raise the issue of standing *sua sponte* at any time. *See Green Haven Prison Preparative Meeting of Religious Soc'y of Friends v. N.Y. Dep't of Corr. & Cmty. Supervision*, 16 F.4th 67, 78 (2d Cir. 2021) (courts "are entitled at any time *sua sponte* to delve into the issue of standing").

To establish Article III standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo v. Robins,* 578 U.S. 330, 338 (2016). "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Moya v. U.S. Dep't of Homeland Sec.*, 975 F.3d 120, 129 (2d Cir. 2020).

The Court construes pro se pleadings liberally and interprets them to raise the strongest arguments that they suggest. *Barnes v. City of New York*, 68 F.4th 123, 127 (2d Cir. 2023). Nonetheless, "pro se status does not exempt a party from compliance with relevant rules of procedural and substantive law." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006); *accord McKenzie-Morris v. V.P. Recs. Retail Outlet, Inc.*, No. 22 Civ. 1138, 2023 WL 5211054, at *5 (S.D.N.Y. Aug. 13, 2023).

### III.    DISCUSSION

The Court lacks subject matter jurisdiction because Plaintiff lacks standing.[2]  He lacks standing to assert that his First Amendment rights were violated by the tax lien and foreclosure, which were not against him but rather against the church where he is the pastor and against the church's property.  Plaintiff's claims all arise from the tax lien entered against non-party Bethelite.  The Complaint alleges that Defendants imposed the tax lien in a discriminatory and unjust manner and that the law allowing the sale of the tax lien is likewise discriminatory and unjust.

The Complaint, construed liberally, alleges a number of harms resulting from the tax lien, including that:  (1) the Property is subject to an unjust foreclosure sale pursuant to the lien; (2) the Property was vandalized, and Bethelite and Plaintiff received hate mail; (3) Bethelite experienced judicial bias resulting in unfavorable decisions in the state court challenges to the tax lien; (4) Plaintiff spent time and resources challenging the lien in state court, impacting his ability to pursue his religious activities and (5) Plaintiff suffered mental and physical harm from the stress of challenging the lien.  Plaintiff lacks standing to seek redress for these harms because certain of the harms were suffered by Bethelite, not Plaintiff, and the doctrine of third-party standing does not apply; the harms suffered by Plaintiff are too indirect because they derive from the alleged misconduct toward, and harm to, Bethelite; and certain of the harms are not fairly traceable to Defendants' conduct.

---

[2] The other issues briefed by the parties are not addressed because the Court lacks subject matter jurisdiction.

### a. Injuries to Bethelite

Several of the alleged harms do not confer standing on Plaintiff because they are harms to Bethelite and not to Plaintiff. The unjust foreclosure of the Property, the vandalism of church property, and the alleged judicial bias in state court litigation about the tax lien on the Property are all alleged harms suffered by Bethelite. They do not satisfy the standing requirement of an injury to Plaintiff. *See TransUnion LLC*, 594 U.S. at 423. These harms may confer standing on Bethelite, the owner of the Property, but not on Plaintiff who has not shown that he has a legal interest in the Property.

As a threshold matter, Bethelite is not a party to this action. Plaintiff purported to name Bethelite as a co-plaintiff in his opposition to the motion to dismiss, but he has not sought to amend the Complaint to name Bethelite a party. Bethelite has not sought to intervene or otherwise join this action, and could do so only if it were represented by counsel. *See Kaplan v. Bank Saderat PLC*, 77 F.4th 110, 116 n.8 (2d Cir. 2023) ("A corporation may not appear in federal court pro se, and default may enter against a corporate defendant that fails to defend itself in the action by retaining counsel"). Even if Bethelite had appeared, any recovery by Bethelite on its claims would be church assets, subject to attachment by Bethelite's creditors, and would not be damages awarded to Plaintiff.

Plaintiff states in opposition to the motion to dismiss that he has "full authority over all [Bethelite] property, property rights, and legal responsibilities of [Bethelite]," but the Complaint and opposition contain no factual allegations to support this legal conclusion. Defendants submitted a 1984 deed to the Property showing Bethelite as the owner of the Property. Plaintiff has not submitted any evidence to the contrary. Plaintiff has not sufficiently alleged or established that he holds any legal right over the Property or Bethelite as an entity. Even if

Plaintiff had legal authority to act as an agent on behalf of Bethelite, the church would need to appear in this action, through counsel, and make claims on its own behalf.

### b. Third-Party Standing

The Complaint alleges certain harms to Plaintiff (rather than Bethelite) caused by the tax lien -- his receipt of hate mail, the diversion of Plaintiff's time and money challenging the tax lien, and his emotional and physical distress. To the extent Plaintiff seeks damages for injury to himself arising from the violation of Bethelite's First Amendment rights, Plaintiff lacks standing to bring such a claim. A "plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Rajamin v. Deutsche Bank Nat. Tr. Co.*, 757 F.3d 79, 86 (2d Cir. 2014); *accord Kallas v. Egan*, 842 F. App'x 676, 678 (2d Cir. 2021) (summary order). However, under the doctrine of third-party standing, a "plaintiff may assert the constitutional claims of a third party if the plaintiff can demonstrate: (1) injury to the plaintiff, (2) a close relationship between the plaintiff and the third party that would cause plaintiff to be an effective advocate for the third party's rights, and (3) some hindrance to the third party's ability to protect his or her own interests." *Camacho v. Brandon*, 317 F.3d 153, 159-60 (2d Cir. 2003) (holding that plaintiff had standing to sue defendants for firing him in retaliation for the First Amendment activity of his boss, a City Council member); *accord Justin v. Tingling*, No. 22 Civ. 10370, 2024 WL 246021, at *3 (S.D.N.Y. Jan. 23, 2024); *but see N.Y. State Citizens' Coal. for Children v. Poole*, 922 F.3d 69, 75 (2d Cir. 2019) (noting but not resolving the "considerable uncertainty as to whether the third-party standing rule continues to apply" after *Lexmark v. Static Control Components, Inc.*, 572 U.S. 118 (2014)).

Even assuming Plaintiff has satisfied the first two requirements of a third-party constitutional claim -- injury to Plaintiff and a close relationship to the third party -- neither the Complaint nor the record evidence supports the inference that some hindrance impairs Bethelite's ability to protect its own interests by seeking relief from the tax lien. That Bethelite has been able to litigate its interests for over twenty years in New York state court further undermines any argument that Bethelite cannot pursue its own interests here. *See Lewis v. City of New York*, 591 F. App'x 21, 23 (2d Cir. 2015) (summary order) (holding that plaintiff lacked third-party standing to assert claim for retaliation against plaintiff on the basis of his mother's allegedly protected speech where plaintiff identified no hindrance to her asserting her own rights); *Justin*, 2024 WL 246021, at *6 (noting that "the numerous cases brought by criminal defendants concerning their right to a representative jury demonstrates that there is no hindrance to defendants asserting their own Sixth Amendment rights."). Because of this deficiency, Plaintiff lacks standing to assert claims for injury to himself arising from the alleged violation of Bethelite's freedom of religion, freedom of speech or other constitutional rights.

### c. Alleged Harms to Plaintiff

To the extent the Complaint asserts that the tax lien against Bethelite violated Plaintiff's own constitutional rights resulting in injury to Plaintiff, that also does not confer standing on Plaintiff. For example, the Complaint asserts that Plaintiff endured "twenty-two years of discrimination, denial of freedom of speech, denial of religious liberty and freedom . . . generated by a discriminatory, predatory and unjust tax lien sale against . . . Bethelite." Plaintiff's injury is insufficient to support standing because it is indirect and derivative of misconduct against Bethelite. It is well established that "[a] shareholder -- even the sole shareholder -- does not have standing to assert claims alleging wrongs to the corporation." *Jones v. Niagara Frontier Transp.*

*Auth.*, 836 F.2d 731, 736 (2d Cir. 1987); *accord Liberty Sackets Harbor LLC v. Vill. of Sackets Harbor*, 776 F. App'x 1, 3 (2d Cir. 2019) (summary order).  In *Jones*, the Second Circuit affirmed dismissal of a plaintiff's individual claims for lack of standing where the claims all involved injuries to his corporation of which plaintiff was the president and sole shareholder and "[t]here were no allegations that defendants had taken any actions against plaintiff in his individual capacity." *Jones*, 836 F.2d at 736.  Similarly, in *Liberty Sackets Harbor*, "because [plaintiff]'s emotional distress and legal expenses indirectly stem[med] from the alleged harm to Liberty [an LLC in which plaintiff was a member], and because he [did] not allege an injury independent of Liberty's injuries, [plaintiff did] not have standing to assert his retaliation claim." 776 F. App'x at 3; *see also Barton v. Ne. Transp., Inc.*, No. 21 Civ. 326, 2022 WL 203593, at *9 (S.D.N.Y. Jan. 24, 2022) (collecting cases).

Here Plaintiff's legal relationship to Bethelite is even more attenuated than that of a shareholder.  He does not claim any legal ownership of Bethelite.  His relationship is more akin to an employee or a customer who might be injured by their proximity to an entity that suffers some actionable harm.  Like a shareholder, such a person does not have standing to challenge alleged misconduct directed at the entity.  All of Plaintiff's alleged injuries derive from injuries to Bethelite caused by the tax lien against Bethelite, the sale of the Property belonging to Bethelite, and the related litigation by and against Bethelite.  Plaintiff here would not have experienced any injury absent Defendants' actions taken against Bethelite.  Plaintiff therefore has not suffered an injury distinct from that of Bethelite and lacks standing to bring claims arising from the tax lien.  As the court in *Jones* said, "Even though [plaintiff] may have felt personally aggrieved by defendants' failure to award contracts to the Corporation, and even

10

though he may have faced the risk of financial loss as a result, the district court correctly dismissed [plaintiff's] individual claims for lack of standing." *Jones*, 836 F.2d at 736.

### d. Harms Not Fairly Traceable to Defendants

Several of the alleged harms -- hate mail to Plaintiff, vandalism of the church property, and alleged judicial bias -- do not confer standing on Plaintiff to bring claims against Defendants for the additional reason that the injury is not "fairly traceable to the challenged conduct of the defendant[s]." *SM Kids, LLC v. Google LLC*, 963 F.3d 206, 211 (2d Cir. 2020).

The Complaint alleges that Bethelite and Plaintiff have been the recipients of hate mail and acts of physical vandalism "inspired by knowledge of the foreclosure and attempt to silence [Plaintiff]." But the Complaint does not allege facts showing that the tax lien and foreclosure caused in any way the hate mail or vandalism. Instead, the Complaint makes clear that the attacks on Plaintiff were in response to the content of Plaintiff's sermons, not the imposition of the tax lien. For example, the Complaint includes a photograph of the church sign, with the words scribbled on it "Godd [sic] is gay" in black spray paint. Plaintiff also states in the Complaint, "I preach that homosexuality is a sin . . . ." The Complaint includes images of hate mail addressed to Plaintiff, which appears to be motivated by antipathy toward him and his teachings rather than anything related to the tax lien or foreclosure. The Complaint does not show a causal link between Defendants and the vandalism or hate mail sufficient to support Plaintiff's standing.

Similarly, the injury to Plaintiff resulting from alleged discrimination by state court judges does not confer standing on Plaintiff to bring claims against Defendants because the injury is not "fairly traceable to the challenged conduct of the defendant[s]." *SM Kids, LLC*, 963 F.3d at 211. The Complaint alleges that the cases were assigned to pro-LGBTQ+ judges who

11

were biased against Bethelite and Plaintiff due to Plaintiff's anti-LGBTQ+ preaching, resulting in adverse decisions.  Like the hate mail and vandalism, the Complaint alleges no facts showing a causal link between Defendants' imposition of the lien and the judges' allegedly discriminatory actions.  The resulting harm to Plaintiff does not give him standing to assert claims against Defendants.

### IV.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED** without prejudice to seeking further relief in state court, to the extent that relief is available.  Leave to amend is denied because the Court's lack of jurisdiction cannot be remedied with an amended pleading.  To the extent that the Complaint, read as broadly as possible, could be interpreted as seeking injunctive relief, that request is rejected for the same reasons as discussed in the related case.  The Clerk of Court is respectfully directed to close the motion at Dkt. No. 73 and to close the case.

Dated:  July 19, 2024
      New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE

12